arguments in Walters v. Stevens, case number 19-1206. And we are ready to hear from the appellant. Thank you, your honors. Craig Weinberg, appearing on behalf of the appellant. We were the defendant below, Stevens, Littman, Biddison, Tharp, and Weinberg, LLC, which is a law firm. The issues in this case are fairly narrow. The case was decided on summary judgment, and therefore the review in this court is obviously de novo. The issues that I've raised in the brief, your honor, is in light of the context of the summary judgment filing, because the trustee did not provide the information in Ms. Wajanek's affidavit. And so, at least with respect to the cross-motion for summary judgment that the trustee filed, that affidavit must be construed in a light most favorable to the law firm. And in conjunction with the motion for summary judgment, it simply wasn't refuted. Section 547 of the Bankruptcy Code requires that there be a transfer of an interest of the debtor in property. That element is part of the trustee's prima facie case. It isn't something that the law firm needs to disprove. It's something the trustee needs to affirmatively demonstrate. And in determining that issue, the Tenth Circuit adopted the dominion and control test, as well as the diminution of the estate test, in the Marshall decision, which was discussed extensively in the briefs. Judge Briscoe, I had to interject here a question. We don't have to determine both of those points, do we? It's either or? It's not clear from the Marshall opinion which, or both, or either or. It discussed both of the tests in getting to the same place under the facts of that case. So I'm afraid I can't answer what the Tenth Circuit meant in the decision. It doesn't articulate both of those. I think you'll find, as I've argued, that under either test, there was not a transfer of an interest of the debtor in property in this case. But to answer your question, the opinion does not give that instruction on which test. Okay. Thank you. So under the first test, what's referred to as the dominion and control test, a transfer of property will be a transfer of an interest of the debtor in property if the debtor exercised dominion or control over the transferred property. And in this particular context, the question is simply whether the debtor had the ability to direct the distribution of the loan proceeds. And specifically for Marshall, they say, quote, the debtor's exercise of their ability to control disposition of the loan proceeds is the essence of the case. And in that case, the payment from Capital One to MBNA constituted a debtor's discretionary use of borrowed funds to pay another debt. Here the affidavit from Ms. Wagenknecht is very clear. She stated that the loan was not a general line of credit, that her son could have used however he wanted or desired. She specifically stated that at no time could the debtor direct how the loan proceeds were used, applied, or distributed. And that earlier the affidavit was referred to as the bankruptcy court. Judge Briscoe, again, let me interrupt again. I'm sorry. On the issue of the affidavit, is that affidavit before us? The bankruptcy court, when it ruled, said that it was inadmissible. The BAP reversed that. But in these kinds of cases, don't we look at the ruling of the bankruptcy court and isn't that controlling? That was not my understanding, Your Honor. My understanding is that the review in this court is from the next lower level court, which would have been the BAP. I didn't need to reappeal, in other words, to this court the issue of the admissibility of the affidavit because the BAP already said it should have been reviewed. So why would I now... You think our review here is of the BAP's ruling and not of the bankruptcy court's ruling? I believe that's correct. If your belief there is wrong, what is the consequence to your argument? Well, if the court is going to review the bankruptcy court ruling on its own, then I would ask for leave to rebrief the issue that I prevailed on insofar as the admissibility of the affidavit because it wasn't my understanding that I needed to appeal an issue that I won. Well, it all gets back to the basic question of really what ruling do we review at this point, but I think we have case law on that point. You may proceed. Go ahead. Considering the affidavit, I think it's very clear that the only evidence before the court was that it wasn't a discretionary use of borrowed funds, that the debtor in this case could not have directed how the loan proceeds were used or distributed or applied, and therefore... Mr. Weinberg, this is Judge Ebel. On the control test, which is what you're focusing on, not yet the diminishment of the estate, but this control test, what happens when the bankrupt said that, in fact, I did exercise and had control? I told mom I wanted this money to go to my law firm. She said, yes, I agree, and I also wanted to go to this law firm. I wouldn't give it to you for any other reason, and he says, good. My control is that you send it to the law firm because that's what I want, too. So why do you say that he has no control over it if his argument is, I do have control, my exercise that I control happens to just coincide with what my mom wants? Well, I think there's a difference between a request and control. The affidavit stated that he asked his mother if he could borrow the money for the purposes of paying the law firm. Mom said, yes, I'll give you the loan, and that's the only place I'm going to direct the money. That's much different than saying that the debtor had the ability to decline later and say, I really don't want to pay the law firm. I'd rather go out and get myself a car. He doesn't have the ability to use the money however he wants. The fact that the payment went as he originally requested is a completely different type of analysis. He doesn't, therefore, have the ability or the discretion to use the loan proceeds for any other purpose that he may desire, and that, as I understand it- Counselor, this is David again. Why don't you address the second of those, the diminishment of the estate, which is largely what the case was based upon, I believe. Anyhow, why don't you address that? Well, I think the Tenth Circuit's opinion in Marshall focused on both of those, and I think here it's the same situation. Under the diminution of the estate test, a transfer of property constitutes an interest of the debtor in property if it deprives the bankruptcy estate of resources which would otherwise have been used to satisfy the claims of creditors. As Marshall put it, quote, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated. And here, once again, the affidavit provided that the loan was not a general loan to the debtor and, importantly, that she would not have made the loan unless the funds were used exclusively to pay the law firm. This is Judge Crisco, if I could interrupt. Don't we have actually a note that memorializes this loan? And does it specifically state the purpose for which the money shall be used? You do have a note, and it does not state directly in it the purpose for which it shall be used. That was the argument before the BAP on whether or not such a term would have... Well, isn't that significant? Doesn't that put the money in the, at least temporarily, in the pocket of the debtor? It does not temporarily or otherwise ever put the money in the pocket of the debtor because the affidavit, which was outside of the parole evidence rule, said that she would not have made the loan unless the funds were used exclusively to pay the firm. All the note does is memorialize the debtor's agreement to repay the money to his mother. It doesn't say where the funds had to go or whether they had to go, but that's what the mother's testimony and the only testimony and the only affidavit that you have in front of you reflects. But isn't the note, the written note, the best evidence? It's not the best evidence. This was a... These were arguments before the BAP that the note was a form note that they printed out off of some website. This is a transaction between a mother and her son where you would not expect the full detail that maybe you might get if you went to a lawyer. It's an intra-family transaction and these were the considerations for why the parole evidence rule on the nature and the scope and the purpose of the loan didn't apply to preclude Ms. Wagenknecht from telling the court what the true transaction was between her and her son. Counsel, Judge Lucero, am I correct in my understanding of the briefs that the actual proceeds themselves were constituted of a check from the mother directly to the law officer? That is correct. And the affidavit also... The proceeds never touched the estate directly, or the debtor directly, is that correct? That is also correct, Judge. And the affidavit makes it also clear that the debtor had no interest in... You don't really need the affidavit to prove that point, do you? That is, aren't the checks in the record or some proof in the record of the payment to the firm from the mother? I believe that the check from the mother to the law firm is in the record and in the appendix. What you do need the affidavit to say, however, and it does say this, is that the debtor did not also have some interest in this specific account upon which the check was written. That goes to the other aspect of the case that you're not pursuing at this point. It also goes to this issue that you're inquiring about, that the debtor never touched these funds. It was never in his possession. It was never in the estate. And the important point from the argument on the diminution of the estate is that it never would have been in the estate, because no money would have been available to other creditors here, because the mother wouldn't have made the loan unless the money went to the law firm. And that is what is significant. Well, Judge Ebell, your point really is, even if it were in the estate, even if there was a hard check written, given to the son, the check was only cashable by the law firm, because it was only made payable to the law firm. So the most that the estate could believe was that it was a conduit, not a owner of that property. I think that's a fair argument, or a fair assessment. So your argument would be by giving the son a lockbox, and say, here is a strongbox that's locked. Would you please, on your way home tonight, drop this lockbox off at your friend's house? It's got something in there I want you to deliver for me, to your friend, the lawyer. If the facts were that way, I think that's correct. But I think it's even easier here, because it never even flowed through to the son. It went directly from mom to the law firm, and it wouldn't have even gone there. There wouldn't have been any money for other creditors in this case, at all. No creditor was harmed here. No creditor got left behind. Judge Briscoe, again, didn't the debtor effectively obtain access to the loan proceeds when he executed the note? My understanding is that's how the bankruptcy appellate panel ruled. And I don't see the logic in signing. All the note says here, if you look at it, is it's just an agreement to repay money. There's no, I'm distributing money to you. You write the check to the law firm, and I'm agreeing to repay you, and it's a demand note. So whenever you ask me for that money back, I'll pay you back. But it didn't give the debtor discretion over how that money could be used. And that's the essence of Marshall, and that's the essence of the argument here, at least under the control theory. Thank you. So, unless there are further questions, I'd like to reserve the rest of my time. Thank you. Thank you. We're ready to hear from the appellee. Thank you, Your Honor. May it please the Court and the opposing counsel, my name is Dave Wadsworth. I am the attorney representing Jared Walters, who is the appellee and was the plaintiff below. He's the Chapter 7 trustee of the Bankruptcy Estate of Eric Wagenknecht and Susan Colbert. Mr. Wadsworth, you're getting faint. I'm having trouble hearing you. Would you put the phone close to you and speak louder, please? This is Judge Ebell. Sorry, Your Honor. The phone is right in my mouth, and I have volume all the way up, so I apologize for that. So, let me start with the question that I think Judge Briscoe asked about, and maybe Judge Ebell did as well, about what order is being reviewed here. I didn't cite anything in the briefs because I think it's pretty common knowledge that on review of a BAP appeal, the review is of the Bankruptcy Court order, not of the BAP order. So, the question here really is whether what I see as being appealed is the second holding of Judge Romero in the Bankruptcy Court, which is even if the court admitted the affidavit, would the court be entitled to summary judgment? And Judge Romero said the trustee would because the argument that is being advanced by the appellant is the earmarking argument, and Judge Romero found that based on the Moses case and the Kirst case, that earmarking is not a recognized offense to preference avoidance in this circuit. And so, that's the ruling that is being appealed, and it wasn't really appealed because the appellant both at the BAP and in the briefs before this court has somewhat mystifyingly taken the position that he's not raising an earmarking argument, which makes no sense because the only distinction between the facts that he's alleging and the facts in the Marshall case is this control element, and the Marshall case said, well, if you're going to argue control, then it's earmarking, and we're not going to decide earmarking in this case because that wasn't an issue. So, in any event, because that is the... Judge Mucero, I understood earmarking to be a doctrine that applies to co-debtors and that the appellant was essentially conceding that the mother was not a co-debtor and that strictly speaking, what he was arguing was not a earmarking situation, but rather a pure case of control and diminution under Marshall. Am I wrong about that? Well, that's, I think, a charitable way of viewing the argument, and my response to that would be that Judge Romero addressed that by saying that diminution of control, diminution of the estate are not separable concepts from earmarking. They are part and parcel of that analysis, which is not in the explicit language of Section 547, and those are two concepts that are used in analyzing earmarking. If I may, let me posit this hypothetical. Let's assume you have a family with two children, A and B. A is in bad financial straits and is going to pretty obviously be facing bankruptcy. Child B is a daughter who is married to a lawyer in a law firm that has been representing A, and so A goes to the mother and says, this is going to create terrible intra-family situation if we end up hurting child B's relationship with her husband because we're just going to leave this law firm high and dry for helping me. So the mother says, I will lend you money, but only on the condition that we pay the law firm. I think close to the situation that Judge Ebel was positing. So the mother agrees to loan $20,000 in this hypothetical to B to avoid this problem and earmarks, in quotes, essentially creates a lockbox where the money is going to go to the law firm, in fact, rights affected law firm. How has the estate been diminished by virtue of that transaction? So, Your Honor, I think that, I mean, I have two responses to that. One is, diminishment is not a term, a phrase used in Section 547B. The only phrase that's applicable is whether a transfer of property is deducted. But it's a sine qua non. It's a but-for situation. The money never would have gone there but for the fact that the mother gave it to the firm, not to the child. Okay, so in addition to what I just said, I would also say that as I think was found in Marshall, if there's a documented promissory note with an obligation to repay from the debtor, there has to be an instance at which the estate had the right to this money and it lost it. So there's a diminishment. I beg to differ with you. There's no instance there. There never was not even a nanosecond. The check went from the mother to the firm. It never touched the son. All the son did was acknowledge, or to use counsel's word, memorialize the fact that he was going to pay the mother the $20,000 when he's able to do so. So in that, Your Honor, I would have two additional arguments to that. The first is that if you look at the Fox case, which we cited in the response, the diminution of the estate test, that court, the Kansas bankruptcy court, said you don't just look at was there a net change to the estate, you look at the net change to the creditors. And as in this case, the person that made the new loan who substituted for the old creditor is left holding the bag. I mean, that person, the old creditor of the law firm gets 100 cents on the dollar and the person that made the new loan gets whatever fractional distribution the Chapter 7 trustee makes in the case. That's exactly what one of the primary reasons the preference statute exists is to prevent that kind of inequity. And so in the Fox case, they said that that is an element that you look at when considering this diminution element. So I would ask the courts to apply the same here. I also would say that if you look at the rationale in Moses and Kirst, that the equitable purpose for this diminution of control and this diminution of these tests, equitable purpose for these tests was to prevent somebody from having to double pay, from having to guarantor pay in the first instance, have it be avoided, and then still be liable on the debt. When that doesn't exist, all of these concepts, the diminution of control and diminution of the estate, they're gloss added by the courts to what is otherwise a fairly unambiguous provision, which says, was there a transfer of property of the estate? And under the Marshall case and Supreme Court precedent, you look at Section 541, which is about as broad as it possibly could be. And it says, all legal and equitable interests of the debtor, which as the Moses court said, and I think Judge Pisco suggested in my opponent's opening argument, it's almost inconceivable that somebody who was borrowing money and is obligating themselves to repay that amount through a loan does not have some interest in the loan proceeds. And so we would submit, Your Honor, that this is an earmarking case if the affidavit comes in. If the affidavit either doesn't come in, or if this court agrees with my client and the BAT that there are contested facts here, i.e. the existence of the note, which Judge Pisco observed contradicts the argument set forth in the affidavit, but also you've got, as the BAT found, the voluntary petition, Statement of Financial Affairs, which I think is at pages 65 and 66 of the appendix. Question six asks Eric Wagenknecht, did you pay any interest in bankruptcy? And he said, yes, I did. And then he explains that the payment was made by his mother for his benefit. So I would submit that as the BAT found, even if you do consider the affidavit, there are disputed facts that if you're not inclined to counsel Judge Lucero again, would your argument be the same? Would you still claim to prevail if the son had not issued a promissory note to the mother, but that it was seen as pure gratuitous payment by her to the firm? No. That would be a different scenario, I think, Your Honor. One of the cases, the Moses case, talks about that. Or maybe it was in the BAT talks about that, that if it was a gift, it's a different scenario, because then you have a stronger argument that the debtor had no interest in the property. But here, I mean, there's a loan. And I mean, I guess it kind of defies logic in my mind, because Ms. Wagenknecht is listed as a creditor. She's a creditor of the bankruptcy estate because of this loan. If she's a creditor, and the debtor borrowed money, how could he, in any conceivable sense of the definition of the word, interest in property, not have an interest in the loan proceeds? I mean, it's simply, and that is ultimately, I think, where the Kirst and the Moses case come down on this rejection of earmarking, which is that these doctrines are, and even the BAT kind of says this when it talks about the difficulty in applying that diminution of use test, is that these are, to some extent, these are judicial fictions created to achieve a result. They're not in the bankruptcy code, and there's no reason for them to be added when here, there is no inequity to be resolved. In fact, as I think Kirst says, it's the reverse. Mrs. Wagenknecht is the one that is being dealt the shorthand here by making this loan and then not getting, you know, and then having to share in the minimal Chapter 7 distribution. This is Judge Briscoe again. Do we have to look at either dominion and control or diminution of estate then? Are they both legal fictions? Well, so I would say that if the, I mean, broadly speaking, I would say you do not have to because if you, as Judge Romero basically said, if you reject earmarking as a recognized offense to preference avoidance, then the mere fact that there's the existence of this loan agreement, I would submit, is sufficient to show an interest in property. So you wouldn't have to look at either. If you are going to look at those, I would also, to answer the question, Tessar, conjunctive or disjunctive, I would agree with Mr. Weinberg, it's not clear. There is a Utah case, though, in Ray Baldwin 514BR646 from a few years ago where the Bank of State Court observed in a footnote that they thought that it was disjunctive, that it was one or the other. If you've not cited that in your brief, if you could give us a 28-J letter on that. Oh, absolutely. The Baldwin case. Yeah, we'll do that. But in any event, if the court is going to apply the earmarking doctrine analysis, which my opponent has not asked it to do, element one of that test is control. I mean, to the extent that the court does say this argument was preserved on appeal and we're going to consider it, then I think you do have to consider control. And was there control here? I mean, we're getting back to the issue of the nanosecond and whether or not once the loan document, the note was executed, was there a nanosecond of control by the debtor? I would say the nanosecond applies to the diminution argument, not the control, and I would go back to your observations earlier that, and the BAPS observation or recognition, that the control was, and actually Judge E. Bell I think said this, that it was the debtor who went to his mom and said, I need this money. Please lend me this money so I can pay this law firm. So the control was evidenced or was realized in what the debtor asked. I mean, the debtor was the one that got this whole ball rolling. It was his request as to why the loan was made. Thank you. We would ask, Your Honors, that we think Judge Romero got it right. It was a very specific holding that this was an earmarking argument and that it doesn't apply in the Tenth Circuit, and we would ask that that ruling be affirmed. Thank you. We're ready for the rebuttal. And judges, Mr. Weinberg is actually out of time. Would you like to give him some additional time? Let's give him two minutes. Thank you, Judge. Thank you, Your Honors. So with respect to the order that's being reviewed, if I'm wrong about that, it's not law that I'm familiar with, but if the review is of the bankruptcy court's order, the issue of the parole evidence rule was raised by me in the reply brief. It was further expanded, obviously, before the BAP. And so those arguments are certainly in the record. And because review in this court is de novo, I think the court can consider whether or not the affidavit should have been part of the analysis of the summary judgment order. With respect to the issue on the counsel stated that the mom, Ms. Wagenknecht, was harmed here because she loaned this money and now has to share in a minimal distribution. If you look at paragraph 11 of her affidavit, she actually, it's worse than the trustee did. The trustee forced Ms. Wagenknecht into a settlement, and she doesn't even get a claim against the estate. So now all other creditors are free of claims from both Ms. Wagenknecht and from the law firm. Every other creditor in this case gets a larger percentage of distribution because the law firm was paid and Ms. Wagenknecht released her claim. So those are the two points. With respect to the issue of the debtor asking for the loan and somehow that constituting control, in fact, they could have taken that money out, bought a car, bought a house, did whatever they wanted to with it, but they used and exercised their discretion, which was key in the Tenth Circuit opinion. They exercised their discretion to pay MBNA. In this case, the debtor had no such discretion, even though he asked his mom for the loan for that purpose. It's not as though he controlled that money in any fashion, in any sense, not for a nanosecond, and simply because there's a promissory note that memorializes his obligation to repay her does not give him discretion to use the money however he wanted. Counsel, Judge Lucero, just very quickly, is there a sequence to this? Did the money go to the bank, to the firm first and the note second, or did the note precede the check? The note was executed on January 11, 2016. The check was dated January 14, 2016. Thank you. Thank you. Thank you both for your arguments this morning. This case is submitted. We'll now adjourn this case and wait for our next case. Thank you. Thank you. Thank you. Thank you. Thank you, judges. The court will now pause to set up the next argument. Counsel for 19-1206, Walter v. Stevens, must now disconnect from the call.